IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:24-CV-1086-FL

| | | |
|---|---|---|
| NIGEL MAX EDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, SKIP | ) | |
| LAWRANCE, JOHN MCSHARAR, | ) | |
| MICHEAL WILLOWS, WILLIAM JOHN | ) | |
| DEBEVOISE, SANDRA LYNN | ) | |
| DEBEVOISE, CLARKSTOWN POLICE | ) | |
| DEPARTMENT, JIMMY MCCORMIK; | ) | ORDER |
| OFFICER BARRY, BRUNSWICK | ) | |
| COUNTY SHERIFF'S DEPARTMENT, | ) | |
| DETECTIVE MOORE, OAK ISLAND | ) | |
| POLICE DEPARTMENT, HOPE FOR | ) | |
| THE WARRIORS (FBI), TINA | ) | |
| ATHERAL, ROBIN KELLEHER, | ) | |
| CRIMINAL INVESTIGATIVE DIVISION | ) | |
| CAMP LEJEUNE, SEAN MANDALL | ) | |
| (Neas Man lab); and 22 UNTIL NONE, | ) | |
| | ) | |
| Defendants. | ) | |

This personal injury action, wherein plaintiff proceeds pro se upon amended complaint

filed December 2, 2024,[1] is before the court upon a handful of motions to dismiss, addressed below.

**BACKGROUND**

Plaintiff, a decorated Marine proceeding on his own behalf to advance this complicated

case, references a variety of claims including alleged violation of an Eighth Amendment "right of

---

[1] Plaintiff attempted to amend his November 20, 2024, complaint November 21, 2024, with an unsigned document. (DE 5). Upon notification of the deficiency, plaintiff submitted a signed amended complaint December 2, 2024. (DE 8). Hereinafter, all references to the complaint are to this amended complaint at docket entry 8.

Protection against Cruel and Unusual Punishment"; "Crimes against humanity; Genocide and Violation of Human Rights Human trafficking Attempted murder"; "kidnapping and drugging;" and additional alleged wrongs by defendant United States of America in connection with his military service and later interactions with "Clarkstown Police Department" officers and others. (Compl. (DE 8) at 2-5).[2] He seeks damages from defendants William John DeBevoise ("William DeBevoise") and Sandra Lynn DeBevoise ("Sandra DeBevoise"), who appear to be plaintiff's parents,[3] and punitive damages from "the United States Government and authorities." (Id. at 5). Half a million dollars is sought also from persons identified as "Vanderbilt Gang members," in addendum to complaint, which purported members include named defendants Skip Lawrance ("Lawrance"), Micheal Willows ("Willows"), John McSharar ("McSharar"), and Jimmy McCormick[4] ("McCormick"). (DE 63).

Multiple defendants have lodged motions seeking dismissal on various grounds. The court lists below these motions now pending:

1. Defendants McCormick and Clarkstown Police Department ("Clarkstown") pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), (5), and (6) (DE 33);

---

[2] Unless otherwise specified, page numbers in citations to the record in this order refer to the page number of the document designated in the court's case management/electronic case filing (CM/ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

[3] Exhibits attached to the complaint suggest defendants William DeBevoise and Sandra DeBevoise executed a birth certificate identifying plaintiff as "Sean William DeBevoise." (Compl. Ex. (DE 8-1) at 6.

[4] The complaint and amended complaint name "Jimmy McCormik," (DE 1 at 1; DE 8 at 1); however, in responsive pleading defendant spells his name "Jimmy McCormick" (DE 33 at 1). In the analysis herein, for ease of reference, the court adopts the spelling used by defendant McCormick.

2.      Defendants Tina Atherall[5] ("Atherall"), Robin Kelleher ("Kelleher"), and Hope For The Warriors[6] (FBI) ("Warriors") pursuant to Rules 12(b)(1), (5), and (6) (DE 35);

3.      Defendants Detective Moore ("Moore") and Brunswick County Sheriff's Department ("Brunswick County") pursuant to Rule 12(b)(6) (DE 51);

4.      Defendant Oak Island pursuant to Rules 12(b)(2), (4), (5), and (6) (DE 56); and

5.      Defendants United States of America ("United States"), Criminal Investigative Division Camp Lejeune ("CID Lejeune"), and Sean Mandall ("Mandall") pursuant to Rules 12(b)(1) and (6) (DE 83).

Defendants Sandra DeBevoise and William DeBevoise, proceeding pro se, make sworn answers respectively filed December 16, 2024, denying allegations against them. (DE 21, 22). These defendants plead for mental health treatment to be provided to plaintiff. Plaintiff was separated from service with 100% disability, appearing to have suffered four gunshot wounds including one to the head, resulting in traumatic brain injury, the direct result his filings show, of combat related injury. (DE 8-3).

No response has been made on the record by remaining named defendants identified as: Officer Barry ("Barry"); 22 Until None; Lawrance; Willows; and McSharar.

Plaintiff's responses to filings made by defendants contesting his claims and seeking dismissals are fully formed. As such, after careful consideration by the court, the matter is ripe for rulings announced below. The court sets out a brief statement of alleged facts first, incorporating

---

[5]     The complaint and amended complaint name "Tina Atheral," (DE 1 at 2; DE 8 at 2); however, in responsive pleading defendant spells her name "Tina Atherall" (DE 35 at 1). In the analysis herein, for ease of reference, the court adopts the spelling provided by defendant Atherall.

[6]     The complaint and amended complaint name "Hope for the Warriors (FBI)," (DE 1 at 2, DE 8 at 2); however, in responsive pleading, defendant capitalizes its name "Hope For The Warriors" and disclaims any connection to the FBI (DE 36 at 2).

other alleged facts as may be necessary in its order. The full scope of plaintiff's allegations in his filings of record all are incorporated by reference.

## STATEMENT OF ALLEGED FACTS

In sum, plaintiff alleges a wide-ranging conspiracy among the various defendants originating with, inter alia, the "Iraq War," the "Abu Ghraib Scandal," the "Epstein Pedophile Ring," and "Attacks on 9/11." (Compl. (DE 8) at 2). Plaintiff suggests numerous misdeeds, including crimes against humanity, human trafficking, attempted murder, hate crime, pedophilia, falsifying a birth certificate, kidnapping, drugging, slander, torture, strangulation, medical malpractice, vandalism, poisoning, and harassment. (Id. at 2-4).

Plaintiff alleges a "Hate Crime (LGBQT toward a straight man(me)) who was raised as a straight male for (LGBTQ) purposes in an illegal pedophile sex ring." (Id. at 2). He further alleges defendants "William and Sandra DeBevoise are LGBQT White Supremacist Pedophiles directly responsible for" a variety of wrongs including: "Falsifying Birth Certificate for a feral child," "kidnapping and drugging (Involuntary Intoxication) (with growth hormone as a child) the plaintiff for their monetary gain in the film industry," and "Attempting to turn the plaintiff into a 'Home Grown Terrorist (Slander)'." (Id. at 2-3). Additionally, the complaint alleges defendant officer McCormick "escorted [plaintiff] to people's houses to install fans, that in LGBQT language were all fans of pedophilia developed by the Clarkstown Police Department working with Epstein." (Id. at 3).

Under the heading "Criminal Investigative Division, Camp Lejeune, NC (Sean Mandall)," plaintiff alleges, inter alia:

> The Plaintiff did not even know existed until a couple years ago, all while the Plaintiff has been saying something was wrong since surviving my wounds from Iraq; where on the most official mission of my career the U.S. Marine Corp murdered the other man (Corpsman) and attempted to murder me as a (Hate Crime)

4

locally and lead by the "Abu Ghraib Scandal" where the U.S. Government was performing a genocide against straight men by the LGBQT Community running the prison and murdering, torturing/trafficking Iraqi prisoners to fight

(Id.).  He further states "I only survived because they thought I was dead," and "I was sent home as a drug mule (in my abdomen) in a body bag and branded with a letter 'A' on my head."  (Id.).

Under the heading "Federal Bureau of Investigation," plaintiff alleges, inter alia, "As observed on my false birth certificate I was born in Suffern NY which Translates to a U.S. Firm for NE, the plaintiff is a NE," "the Plaintiff is still being trafficked by corrupt authorities taking bribes," and "These wrongdoings are obvious once LGBQT language is discovered and motive uncovered."  (Id. at 4).

Under the headings "Brunswick County Sheriff Department," "Oak Island Police Department," and "Hope for the Warriors," plaintiff alleges "Detective Moore was called in when the Plaintiff's 'Mother' poisoned the plaintiff with rat poison in his tea and went to the doctor with his mother because he understandably wasn't feeling well," "the entire Island knew the plaintiff was rehabbing a raccoon, police shot the raccoon, which is understandable mistake, however they intentionally told me on my Birthday which reinforces that it was intentional, not a mistake," and "After years of cooperating with H4W, they accused the plaintiff of being a 'Woman Beater,' in an attempt to get the plaintiff to commit suicide (Slander)."  (Id.).

Plaintiff further alleges "This article in the 'Journal News,' announces publicly in LGBQT/terrorist code of his intent, proof that he is a White Supremacist, using a federally setup war for Pedophiles to /murder/dispose of their prisoners in Iraq, disgracing this country and every military service member throughout history."  (Id. at 5).

5

Along with his complaint, plaintiff filed as exhibits a collection of annotated photographs and screenshots of statements, articles, and documents (DE 8-1), his resume (DE 8-2), and a Certificate of Release or Discharge from Active Duty (DE 8-3) ("Certificate of Release").

Annotations on these exhibits include the following additional allegations: "This is literally a published article in a newspaper of supposedly my 'Father,' sealing the deal to have me killed in Iraq a month before I was set up," "Your sheriff is helping pedophiles, the entire Iraq war and Abu Ghraib scandal was caused by White supremacists killing their own kind," "This crime was solved before it occurred and because I survived something I was not supposed to authorities are sabotaging my life instead of holding the criminals accountable, because it makes people look bad," and "The night I was wounded in Iraq before the mission, a man I never seen before told me he could stop this; I thought it was a normal mission; he knew it wasn't because they were watching and most likely knew about the article my 'Father,' published." (Compl. Ex. (DE 8-1) at 4, 6, 7).

The Certificate of Release indicates plaintiff served in the United States Marine Corps from 2003 to 2009 and was honorably discharged with the rank of Sergeant. (Cert. Release (DE 8-3) at 1). He earned numerous decorations including a Purple Heart, a Combat Action Ribbon, and a Campaign Medal with two bronze stars. (Id.). Plaintiff survived multiple gunshot wounds, including one to his head, and suffered a traumatic brain injury during his military service. (Id. at 3).

Defendant Sandra DeBevoise alleges plaintiff suffers from delusions and post-traumatic stress disorder.[7] (Sandra DeBevoise Ans. (DE 21) ¶ 11). Defendant William DeBevoise

---

[7]    The court includes these allegations from defendants Sandra DeBevoise and William DeBevoise for background purposes only. Such allegations are not considered for purposes of ruling on the instant motions.

additionally alleges plaintiff suffers from delirium and requires psychiatric care. (William DeBevoise Ans. (DE 22) ¶ 11).

**COURT'S DISCUSSION**

A.      Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[8]

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Bain, 697 F.2d at 1219. Where a defendant raises a "facial challenge[ ] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018). A

---

[8]        In case citations in this order, internal quotations and citations are omitted, unless otherwise specified.

7

court must dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3).

"Pro se complaints are to be read liberally." White v. White, 886 F.2d 721, 724 (4th Cir. 1989). "However, liberal construction does not require [the court] to attempt to discern the unexpressed intent of the plaintiff, but only to determine the actual meaning of the words used in the complaint." Williams v. Ozmint, 716 F.3d 801, 805 (4th Cir. 2013). Liberal construction also does not "undermine [the] requirement that a pleading contain more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008).

B.    Analysis

The court begins by analyzing claims potentially arising under the court's federal question jurisdiction. Plaintiff suggests he may seek to raise federal claims based upon an Eighth Amendment violation and other violation of his constitutional rights pursuant to 42 U.S.C. § 1983; as well as based upon tort conduct that may fall under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. The court discusses each potential federal claim in turn.

1.    Eighth Amendment

In Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), the "Court recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Iqbal, 556 U.S. at 675. Similarly, 42 U.S.C. § 1983 permits suits against state actors for violations of a plaintiff's constitutional rights. See Lugar v. Edmonson Oil Co., 457 U.S. 922, 928 (1982) ("In cases under § 1983, 'under color' of law has consistently been treated as the same thing as 'state action' required under the Fourteenth Amendment."). "Local governing bodies . . . can be sued directly under § 1983." Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690 (1978).

8

"Any remedy under Bivens is against federal officials individually, not the federal government." Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. at 676. "[C]onstitutional guarantees . . . do not apply to the actions of private entities." Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 341 (4th Cir. 2000). Thus, plaintiff's claims stemming from his constitutional rights only apply to individual federal official defendants under Bivens and state and municipal government defendants under § 1983 and Monell.

Those defendants, including Clarkstown, McCormick, Brunswick County, Moore, Oak Island, United States, CID Lejeune, and Mandall, assert plaintiff's claims under the Eighth Amendment must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. The court agrees.

The cruel and unusual punishments clause of the Eighth Amendment applies to claims by prisoners against corrections officials challenging the conditions of confinement. Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016). Conversely, the clause is not applicable when a plaintiff has not been convicted, imprisoned, or incarcerated. See Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."); City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) ("Because there had been no formal adjudication of guilt . . . , the Eighth Amendment has no application.").

Here, plaintiff fails to allege a violation of his Eighth Amendment rights because he does not allege that he has been convicted of any crime or incarcerated. Thus, under Ingraham, plaintiff

9

fails to state an Eighth Amendment claim. Accordingly, those parts of defendants' motions to dismiss seeking dismissal of plaintiff's Eighth Amendment claims are granted. To the extent plaintiff brings claims of violation of his Eighth Amendment rights, such claims are dismissed for failure to state a claim.

      2.     Other Constitutional Claim(s) Arising Under 42 U.S.C. § 1983

Plaintiff suggests that defendant law enforcement officers, who may include McCormick, Officer Barry, Clarkstown, Moore, Brunswick County, and Oak Island, violated additional unspecified constitutional rights in interacting with him. However, plaintiff's complaint does not allege facts giving rise to a plausible inference of a constitutional violation by defendants. Plaintiff suggests, for example, a form of violation of his rights based upon tracking his vehicle (Compl. (DE 8) at 3), injury to a raccoon he was "rehabbing" (id. at 4), or in failing to protect plaintiff from other harms alleged in the complaint by withholding information (id. at 5). Taking the facts alleged in the complaint as true, plaintiff fails to state a claim of constitutional violation on which this court may grant relief.

"Section 1983 provides a cause of action against 'every person who, under color of any statute, ordinance, regulation, custom, or usage, of any [s]tate' deprives someone of a federal constitutional or statutory right." Lindke v. Freed, 601 U.S. 187, 194 (2024) (emphasis omitted) (quoting 42 U.S.C. § 1983). Thus, "§ 1983 actions may be brought against state actors to enforce rights created by federal statutes as well as by the Constitution." Gonzaga Univ. v. Doe, 536 U.S. 273, 279 (2002). However, "Monell permits suits against a municipality for a federal constitutional deprivation only when the municipality undertook the allegedly unconstitutional action pursuant to an official policy or custom." Starbuck v. Williamsburg James City Cnty. Sch. Bd., 28 F.4th 529, 532-33 (4th Cir. 2022) (citing Monell, 436 U.S. at 690-91).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend IV. This right is enforceable against states and state actors through the due process clause of the Fourteenth Amendment.  Mapp v. Ohio, 367 U.S. 643, 655 (1961).  A search is unreasonable if it invades a person's "reasonable expectation of privacy."  Katz v. United States, 389 U.S. 347, 360 (1967).  "[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained."  United States v. Mendenhall, 446 U.S. 544, 553 (1980).  A seizure of property "occurs when there is some meaningful interference with an individual's possessory interests in that property."  Soldal v. Cook Cnty., 506 U.S. 56, 61 (1992).

To the extent plaintiff seeks to assert a Fourth Amendment violation, plaintiff has not alleged a seizure of his property or person by a state actor, without a warrant or probable cause. Plaintiff's allegation that "Clarkstown Police Department was tracking my vehicle with GPS" (Compl. (DE 8) at 3) suggests a search occurred.  See United States v. Jones, 565 U.S. 400, 404 (2012) ("installation of a GPS device on a target's vehicle, and . . . use of that device to monitor the vehicle's movements, constitutes a 'search' ").  However, plaintiff does not allege that a particular officer performed the search or that defendant Clarkstown, a municipality,  undertook the search "pursuant to an official policy or custom."  Starbuck, 28 F.4th at 533.  Therefore, plaintiff has failed to state a claim for Fourth Amendment violation under Monell, 436 U.S. at 690-91.

The Fourteenth Amendment proscribes states from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend XIV, § 1.  "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process."  Reed v. Goertz, 598 U.S. 230, 236 (2023).

To the extent plaintiff seeks to assert a due process violation, plaintiff has not alleged a deprivation of a protected property or liberty interest by defendants. For example, the allegation that an unnamed officer shot a raccoon which plaintiff was rehabbing does not raise a due process claim because plaintiff does not allege a property interest in the raccoon.[9]

Therefore, to the extent the complaint suggests a claim for a violation of other unspecified constitutional rights, under 42 U.S.C. § 1983, it is dismissed for failure to state a claim upon which relief can be granted.

        a.    Defendant Barry

Although defendant Barry has not appeared in this action nor moved for dismissal, the court also dismisses any constitutional claims against him for failure to state a claim. In this circuit, "there are instances in which sua sponte dismissals of complaints under Rule 12(b)(6) are appropriate." Robertson v. Anderson Mill Elem. Sch., 989 F.3d 282, 290 (4th Cir. 2021). In Robertson, the court affirmed the sua sponte dismissal of a claim against a school district because the plaintiff had opportunity and incentive to argue her position in response to a motion to dismiss similar claims against a school and principal. Id. at 291. The same concept applies here.

In response to defendants McCormick and Clarkstown's motion to dismiss, plaintiff had the opportunity and incentive to argue that his complaint states a claim against defendant Barry, an alleged member of defendant Clarkstown. The only argument plaintiff makes, and the only allegation the court has found regarding defendant Barry, is that defendant Barry taught a Drug Abuse Resistance Education program to plaintiff, and such program "allow[ed] the authorities to manipulate and keep 'Eye's on' there 'Ring.'" (Pl.'s Opp. (DE 50) at 3). For the reasons discussed

---

[9] In North Carolina, "no person may take, possess, buy, sell, or transport any wildlife" except as explicitly permitted by statute. N.C.G.S. § 113-291. "Wildlife" is defined to include wild animals and "deemed to include species normally wild, or indistinguishable from wild species, which are raised or kept in captivity." Id. § 113-129.

above, this fails to state a claim of any constitutional violation. Accordingly, to the extent plaintiff seeks to raise claims against defendant Barry for constitutional violation under § 1983, such claims must be dismissed pursuant to Rule 12(b)(6).

In sum, plaintiff's complaint fails to allege any constitutional violation for which this court may grant relief. Therefore, all constitutional claims are dismissed pursuant to Rule 12(b)(6).

> 3.      FTCA

To the extent plaintiff's complaint seeks money damages from the United States for other alleged harms, the court interprets it to raise claims under the FTCA. "The FTCA was designed primarily to remove the sovereign immunity of the United States from suits in tort." Millbrook v. United States, 569 U.S. 50, 52 (2013). The United States is the only proper defendant in an FTCA action. See 28 U.S.C. § 1346(b)(1) ("the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . under circumstances where the United States, if a private person, would be liable."). Accordingly, to the extent plaintiff asserts FTCA claims, such claims only apply to defendant United States.

Defendant United States asserts plaintiff's FTCA claims must be dismissed for failure to exhaust administrative remedies. The court agrees.

The FTCA mandates that any suit thereunder may not be initiated until a plaintiff "present[s] the claim to the appropriate federal agency and his claim [is] finally denied by the agency in writing." 28 U.S.C. §2675(a); see McNeil v. United States, 508 U.S. 106, 112 (1993) ("Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process."). An FTCA "claim shall be deemed to have been presented when a Federal agency receives . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain." 28 C.F.R. §14.2(a). "[T]he

requirement of filing an administrative claim is jurisdictional and may not be waived." <u>Henderson v. United States</u>, 785 F.2d 121, 123 (4th Cir. 1986).

Here, plaintiff's complaint makes no allegation that he has presented a Standard Form 95 or other written notification to any agency. Thus, the complaint fails to assert a basis for this court's jurisdiction over any FTCA claim. Accordingly, defendant United States's motion to dismiss due to lack of exhaustion of administrative remedies is granted. To the extent the complaint includes claims under the FTCA, such claims are dismissed without prejudice for lack of subject matter jurisdiction. <u>See</u> <u>Estate of Van Emburgh ex rel. Van Emburgh v. United States</u>, 95 F.4th 795, 806 (4th Cir. 2024) (affirming dismissal for lack of subject matter jurisdiction FTCA claim by plaintiff who did not comply with statutory exhaustion requirements); Fed. R. Civ. P. 41(b) (dismissal for lack of jurisdiction not an adjudication on the merits).

4.    Remaining Claims

Upon dismissal of plaintiff's Constitutional and FTCA claims, the only surviving claims are for torts arising under state law. Defendants Atherall, Kelleher, and Warriors argue plaintiff's remaining state law claims should be dismissed for lack of subject matter jurisdiction. The court agrees.

A district court "may decline to exercise supplemental jurisdiction over a claim" when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); <u>see</u> <u>Royal Canin U.S.A., Inc. v. Wullschleger</u>, 604 U.S. 22, 31-32 (2025). Here, where all federal question claims have been dismissed, the court declines to exercise supplemental jurisdiction over the remaining claims pursuant to § 1367(c)(3). Accordingly, the remainder of plaintiff's claims are dismissed without prejudice for lack of subject matter jurisdiction. <u>See</u> <u>Royal Canin</u>, 604 U.S. at 31-32.

14

**CONCLUSION**

Based on the foregoing:

1.      Defendants' motions to dismiss for failure to state a claim (DE 33, 51, 56, 83) are GRANTED;

2.      Plaintiff's claims under 42 U.S.C. § 1983 are DISMISSED;

3.      Defendant United States's motion to dismiss for failure to exhaust administrative remedies (DE 83) is GRANTED;

4.      Plaintiff's claims under the FTCA are DISMISSED WITHOUT PREJUDICE;

5.      Defendants Atherall, Kelleher, and Warriors's motion to dismiss for lack of subject matter jurisdiction (DE 35) is GRANTED;

6.      All remaining state law claims are DISMISSED WITHOUT PREJUDICE;

7.      The clerk's provisional seal of the unredacted version of plaintiff's Certificate of Release, given disclosures on its face of plaintiff's personal identifying information, is made permanent and the clerk shall make permanent its provisional seal at docket entry no. 5-3; and

8.      The clerk is DIRECTED to close this case.

SO ORDERED, this the 12th day of March, 2025.


_____
LOUISE W. FLANAGAN
United States District Judge


15